# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

WILBERT R. HURST,

      Plaintiff,

v.                                                    Case No. 3:19-cv-1149-J-32JBT

WHITNEY A. FLESHER, et al.,

      Defendants.

_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

## I.   Status

Plaintiff, Wilbert R. Hurst, a Florida inmate, initiated this case in the Northern District of Florida by filing a pro se Civil Rights Complaint (Doc. 1) (Complaint). The Honorable William Stafford, Senior United States District Judge, transferred the Complaint to this Court. See Doc. 14. Plaintiff raises a number of claims based on constitutional violations that allegedly occurred while Plaintiff was housed at Union Correctional Institution between January 2018 and July 2018. He names the following Florida Department of Corrections employees as Defendants: Whitney A. Flesher, academic teacher at UCI; M. Willforth, classification official at UCI; John Doe, classification official at UCI; Ken D. Jordan, former warden of UCI; Lt. Smith, UCI correctional officer; and Officer Brown, UCI correctional officer. See Doc. 1.

Due to the breadth of his allegations, the Court provides a timeline to summarize Plaintiff's Complaint.

> January 2, 2018 – Defendant Flesher, the tutor supervisor at UCI, called a meeting with all the tutors to discuss ongoing issues. Doc. 1 at 5. At that time, Plaintiff was a prison tutor. During the meeting, Plaintiff and Defendant Flesher engaged in a heated exchange about copy paper, which ultimately resulted in Plaintiff abruptly quitting his tutor job. Id. at 5-6.

> January 3, 2018 – Plaintiff went before the ICT Team for a new job assignment, and Defendant Willforth assigned Plaintiff to a position pushing a 600-pound cart. Id. at 6.

> January 5, 2018 – Defendant Flesher issued a disciplinary report charging Plaintiff with violating Florida Administrative Code Rule 33-601.314 for his conduct during the January 2, 2018, tutor meeting. Defendant Brown provided Plaintiff with notice of the disciplinary report by reading it to Plaintiff in his cell. Id. at 8.

> January 9, 2018 – Defendant Smith conducted a disciplinary hearing. At the hearing, Plaintiff was found guilty of violating Rule 33-601.314, and Ms. Dorsey sentenced Plaintiff to probation. Id. at 10-11.

> January 16, 2018 – Defendant Doe harassed Plaintiff by stating, "I recommend that he be transferred." Id. at 14-15.

> May 18, 2018 – Dr. J. Putney wrote Plaintiff a no push/no pull pass. Id. at 17.

> May 18, 19, 20, 2018 – Defendant Buchanan, Plaintiff's cart-pusher supervisor, made Plaintiff continue his cart-pusher job despite his no push/no pull pass. Id. at 17-18.

> May 19, 2018 – Plaintiff filed a grievance regarding Defendant Buchanan's conduct. Id. at 18.

> May 24, 2018 – Plaintiff went to a sick-call for pain in his

2

hand, and Nurse McClellan prescribed Plaintiff Tylenol. Id. at 18.

May 31, 2018 – Plaintiff filed a formal grievance regarding his cart-pusher job. Id.

June 26, 2018 – the ICT Team reassigned Plaintiff to a new job in "V-Dorm as an orderly." Id.

June 29, 2018 – Plaintiff filed a formal grievance because his new job tasks aggravated the pain in his lower back and hand. Id. at 19.

July 8, 2018 – Plaintiff filed an informal grievance regarding his long work hours. Id.

July 9, 2018 – Plaintiff filed an informal grievance asking Defendant Willforth to reconsider assigning Plaintiff a new job. Id.

July 11, 2018 – Plaintiff was transferred to another prison. Id. at 20.

Based on these events, Plaintiff claims that Defendants violated his due process and equal protection rights; engaged in First Amendment retaliation; were deliberately indifferent to Plaintiff's serious medical needs; and engaged in conduct amounting to intentional infliction of emotional distress. See generally id. As relief, Plaintiff requests the following:

> A[] permanent injunction enjoining Defendant Warden Kevin D. Jordan , and/or his successor in office, agents, subordinates, employees, and all other persons in concert therewith, to stop the customs, practices, and policies of violating plaintiff's and other elderly inmates' First Amendment Rights to Free Speech by not allowing them to reveal their medical problems to the ICT Team before they are given their perspective

job assignments . . .

[and] by not allowing plaintiff and other inmates a real opportunity to call witnesses for their defense, and by not giving plaintiff and other inmates a real opportunity to state their case, at the disciplinary hearing.

Award plaintiff compensatory and punitive damages against [D]efendants Whitney A Flesher, M. Willforth, [D]efendant John Doe, and [D]efendant Warden Kevin D. Jordan. Under the Tort claim of Florida, award damages for Intentional Infliction of Emotional Distress, jointly and severally.

Award plaintiff compensatory damages against [D]efendants Lt. Smith, Officer Brown, and Sergeant M. Buchanan.

Id. at 23. The Court addresses each of Plaintiff's claims in turn below.

## II. **Analysis**

The Prison Litigation Reform Act requires the Court to dismiss a case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B). The Court liberally construes the pro se plaintiff's allegations. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

"A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing Battle v. Central

4

State Hosp., 898 F.2d 126, 129 (11th Cir. 1990)). A complaint filed in forma pauperis which fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Section 1915(e)(2)(B)(i) dismissals should only be ordered when the legal theories are "indisputably meritless," id. at 327, or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Id.

With respect to whether a complaint "fails to state a claim on which relief may be granted," § 1915(e)(2)(B)(ii) mirrors the language of Federal Rule of Civil Procedure 12(b)(6), so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotations, alteration, and

citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." <u>Roe v. Aware Woman Ctr. for Choice, Inc.</u>, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right secured under the Constitution or laws of the United States. <u>See</u> <u>Salvato v. Miley</u>, 790 F.3d 1286, 1295 (11th Cir. 2015); <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1130 (11th Cir. 1992). Moreover, "conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal." <u>Rehberger v. Henry Cty., Ga.</u>, 577 F. App'x 937, 938 (11th Cir. 2014) (per curiam) (quotations and citation omitted). In the absence of a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against a defendant.

### a.    Due Process

Plaintiff alleges that Defendant Brown and Defendant Smith violated his due process rights under the Fourteenth Amendment when they failed to speak to or ensure the appearance of Plaintiff's witnesses at Plaintiff's disciplinary hearing and failed to allow Plaintiff to speak at his disciplinary hearing. <u>See</u> Doc. 1 at 9-11. According to Plaintiff, three days after his argument with

Defendant Flesher, Defendant Flesher fabricated a disciplinary report charging

him with violating Florida Administrative Code Rule 33-601.314.[1] Id. Officer

Brown notified Plaintiff of the disciplinary report by coming to Plaintiff's cell

and reading the report aloud. According to Plaintiff, the disciplinary report set

forth the following:

> On January 2, 2018 at approximately 1130 hours
> while assigned as the Academic Teacher, inmate Hurst,
> Wilbert . . . approached me and asked for additional
> paper. At that time I advised him that there was no
> additional paper. At that time inmate Hurst began to
> yell in an aggressive manner stating: "You mean to tell
> me with all that damn money the State can't f**king
> provide any more damn paper!" Inmate Hurst is in
> direct violation of F.A.C. Chapter 33-601.314 rules of
> prohibited conduct code: (1-4) Disrespect to officials,
> employees, or other person of constituted authority
> expressed by means of words, gestures, and the like.

Doc. 1 at 8. When Defendant Brown finished reading the disciplinary report,

Plaintiff contends that he attempted to give Defendant Brown a list of witnesses

that would refute the disciplinary report allegations, but Defendant Brown

refused to listen or investigate any of Plaintiff's potential witnesses. Id. at 8-9.

Plaintiff avers that during his disciplinary hearing, Defendant Smith would not

let Plaintiff speak, nor did he give Plaintiff an opportunity to call witnesses. Id.

at 11. He argues that Defendant Brown and Defendant Smith's conduct violated

---

[1] The Court addresses Plaintiff's claim that Defendant Flesher fabricated
the disciplinary report when addressing Plaintiff's retaliation claims.

his due process rights, and as a result of this due process violation, he was found guilty of violating Rule 33-601.314 and sentenced to probation.[2] Id. at 9-11. He further argues that this disciplinary report ruined his chances of getting his petition for clemency granted or getting an interstate compact transfer to Pennsylvania or Delaware. Id. at 10.

There are two circumstances in which a prisoner may be deprived of a constitutionally protected liberty interest, such that due process is required: (1) "when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court"; and (2) "when the state has consistently bestowed a certain benefit to prisoners . . . and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Kirby v. Siegelman, 195 F.3d 1285, 1291 (11th Cir. 1999) (citing Sandin v. Conner, 515 U.S. 472 (1995)). In these two instances, "[w]hen a prisoner's due process rights are triggered, he is entitled to, among other things, an opportunity to call witnesses and present documentary evidence at a disciplinary hearing." Allen v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 836, 839 (11th Cir. 2014) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)).

---

[2] Plaintiff also appears to allege that Defendants Brown and Smith's refusal to allow Plaintiff to call witnesses at his disciplinary hearing violated his First Amendment right to free speech. Doc. 1 at 22. However, Plaintiff does not allege any facts to support that legal conclusion. Id.

Plaintiff has not alleged a deprivation of a constitutionally-protected liberty interest that would implicate a due process violation regarding his disciplinary report and hearing. Although he alleges that he was placed on "probation" because he was found guilty of the disciplinary report, he has not alleged that being placed on "probation" presented "the type of atypical, significant deprivation" that creates a liberty interest. See Allen, 578 F. App'x at 839 (finding no due process claim regarding defendant's failure to ensure appearance of plaintiff's witnesses at disciplinary hearing, because the plaintiff failed to allege that the change in his conditions of his confinement following the hearing created a liberty interest); see also Sandin, 515 U.S. at 472 (30 days in segregated disciplinary confinement did not trigger due process protection where the conditions of disciplinary segregation were not significantly different from the conditions outside disciplinary segregation). Plaintiff also fails to allege that he lost good time credits as a result of his disciplinary proceedings. See Wolff, 418 U.S. at 557 (prisoners have a constitutionally-protected liberty interest in state-created right to good time credits). As such, because Plaintiff has not alleged that a constitutionally-protected liberty interest was affected by the outcome of his disciplinary hearing, he has failed to state a due process claim under the Fourteenth Amendment. The due process claims against Defendants Brown and Smith are due to be dismissed.

### b.     First Amendment Retaliation

Plaintiff argues that Defendants Flesher, Willforth, and Doe engaged in various retaliatory actions against Plaintiff, because Plaintiff exercised his First Amendment right of freedom of speech when voicing his complaints at the tutor meeting. Doc. 1 at 2. He also alleges that Defendants Willforth and Doe retaliated against Plaintiff for filing grievances after his job reassignments. Id. at 18-20.

### i.     *Statements Made at Tutor Meeting*

First, Plaintiff claims that he was retaliated against for engaging in protected speech during the tutor meeting with Defendant Flesher. Id. at 5. According to Plaintiff, Defendant Flesher requested a meeting with the prison tutors to discuss ongoing issues and complaints. Id. At the meeting, Plaintiff and Defendant Flesher got into an argument. He describes the exchange with Defendant Flesher as follows:

> "Well Ms. Flesher, the only complaint I have is how come we can't get copies made? This is the State of Florida, so don't the State have a budget to buy copier paper?" She then said that she wants us to use scrap paper because of copyright concerns. I then said that I didn't think that that'll look professional, but if that's what you want I'll do it. She then went on to the next issue. She said: "from now on lunch will no longer be brought to the tutors. From now on you will have to go to the chow hall to eat lunch and then come back to work." I said "good!" Then she said: "Hurst, you have one foot out the door." I replied, "what does that mean Ms. Flesher?" She said, "one more smart comment and

> you're out of here." I then said, "I wasn't trying to be
> smart, but the food is usually cold when we eat it, so I
> like the idea of going to the chow hall to eat, but if you
> no longer want me working here, you can put me on the
> ICT list for a job change tomorrow, I'll be glad to go." So
> she said, "You can leave."

Doc. 1 at 5. Plaintiff then abruptly quit his tutor position. Plaintiff claims that

"[e]verything [he] said" during the argument with Defendant Flesher "was

protected speech." Id. at 6. He asserts that Defendant Flesher then retaliated

against Plaintiff by issuing a fabricated disciplinary report charging Plaintiff

with violating Rule 33-601.314.

He also claims that Defendant Willforth and Defendant Doe retaliated

against Plaintiff for the statements he made at the tutor meeting. According to

Plaintiff, on January 3, 2018, Defendants Willforth and Doe retaliated by

reassigning Plaintiff to an undesirable new job – pushing a 600-pound food cart

– without first consulting medical regarding Plaintiff's ability to push the cart.

He further states that on January 16, 2018, Defendants Willforth and Doe again

retaliated by harassing Plaintiff about his disciplinary report in the presence of

Assistant Warden Knox. Id. at 14-15. He claims that Doe exclaimed, "I

recommend that he be transferred"; and Willforth harassed Plaintiff by saying,

"You are the one who was found guilty for disrespecting Ms. Flesher." Id. at 14.

He claims that they intentionally made these harassing comments in the

presence of Knox in hopes of influencing Plaintiff's appeal of his disciplinary

report that was pending before Knox. Id. According to Plaintiff, he filed a grievance regarding Defendants Willforth and Doe's comments and explains that Knox "approved the grievance." Id. at 15.

"The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). Further, it is firmly established that an inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. Id. Three elements are involved in these retaliation claims:

> 1) [the inmate's] speech was constitutionally protected; 2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and 3) there is a causal relationship between the retaliatory action and the protected speech.

Smith, 532 F.3d at 1276.

Here, Plaintiff has failed to sufficiently allege the first element – that his statements to Defendant Flesher were constitutionally protected. Prison officials are accorded latitude in the administration of prison affairs, and "'an

inmate's First Amendment right to free speech is not protected if affording protection would be inconsistent . . . with the legitimate penological objectives of the corrections system.'" Id. at 1277 (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). As such, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct.'" Id. at 1277 (quoting Thaddeaus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999)).

Plaintiff admits that after he made his statements to Defendant Flesher and quit his tutor job, Officer Brown presented Plaintiff with a disciplinary report charging him with violating Rule 33-601.314 of the Florida Administrative Code. Rule 33-601.314 states that an inmate may not engage in "[d]isrespect to officials, employees, or other persons of constituted authority expressed by means of words, gestures and the like." Plaintiff also acknowledges that following a disciplinary hearing, he was found guilty of violating Rule 33.601.314. Doc. 1 at 9. In Mathews v. Paynter, 752 F. App'x 740, 743 (11th Cir. 2018), the Eleventh Circuit held that Rule 33-601.314 was a legitimate prison regulation and a valid limitation on inmate speech. Id. at 743-44 (relying on Smith, 532 F.3d at 1277). It further held that speech found to be in violation of Rule 33-601.314 was not considered protected speech for First Amendment purposes. Id. at 743. Because the statements that Plaintiff made to Defendant Flesher during the tutor meeting were found to be in violation of

Rule 33-601.314, they were not considered protected speech for purposes of the first element of a First Amendment retaliation claim.

Nevertheless, this leads to Plaintiff's second argument: that his statements to Defendant Flesher did not violate Rule 33-601.314, but rather, in retaliation, Defendant Flesher exaggerated the contents of the disciplinary report to ensure he would be found guilty of violating Rule 33-601.314. Doc. 1 at 13. However, "[i]f a prisoner is found guilty of an actual disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." See O'Bryant, 637 F.3d at 1212. Notably, "[w]hether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel." Id. Because Plaintiff has failed to allege a due process violation regarding his disciplinary hearing, see supra at 9, and because he concedes that he was found guilty of the charged offense (violating Rule 33-601.314), he cannot argue that Defendant Flesher issued the disciplinary report in retaliation. See Allen, 578 F. App'x at 840.

Further, even assuming Plaintiff has sufficiently alleged the first two elements of retaliation as to Defendants Willforth and Doe, he has failed to allege the third – a causal relationship between the alleged retaliatory action

(job reassignment to cart pusher and harassing comments) and the protected speech (statements to Defendant Flesher at tutor meeting). In order to establish the third prong, a plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse action was the prisoner's [exercise of free speech]." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted).

To establish subjective intent, a prisoner must provide more than conclusory assertions, possibly through a chronology of events that can be used to infer retaliatory intent. Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (per curiam) (finding conclusory allegations insufficient but officer's temporal reaction to a grievance and circumstantial evidence sufficient to state a claim). However, because prison officials' actions are presumed reasonable, an inmate must produce evidence to support "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury." Crawford-El, 523 U.S. at 598.

Here, Plaintiff alleges that "Defendant [ ] Willforth and Defendant [ ] Doe both had motive for this retaliatory act [(assigning Plaintiff to a cart-pusher job)] because of the fabricated disrespect charge by their friend and co-worker

15

Defendant [ ] Flesher." Doc. 1 at 14. However, Defendants Willforth and Doe reassigned Plaintiff to a cart-pusher position on January 3, 2018, <u>see</u> <u>id.</u> at 6, two days before Defendant Flesher issued her disciplinary report on January 5, 2018, <u>see</u> <u>id.</u> at 8. While Plaintiff appears to claim that Defendant Flesher informed Defendant Willforth about Plaintiff's statements at the time of the job reassignment by "whispering in the ear of a lieutenant who was sitting next to her," <u>see</u> <u>id.</u> at 6, that conclusory allegation alone does not draw a sufficient connection between Defendant Willforth and Defendant Doe's decision to reassign Plaintiff to the cart-pusher job. Likewise, Plaintiff fails to allege facts establishing Defendants Willforth and Doe made their harassing comments with "improper motive causing cognizable injury." See <u>Crawford-El</u>, 523 U.S. at 598. Indeed, Plaintiff states that he filed a grievance regarding the comments and that Knox approved the grievance. Doc. 1 at 15. Therefore, the Court finds that Plaintiff fails to allege a First Amendment retaliation claim regarding the statements he made at the tutor meeting. These claims are due to be dismissed.

    ii.    *May 2018 Grievances*

    Plaintiff argues that on May 18, 2018, Dr. J. Putney issued Plaintiff a no push/no pull pass. Doc. 1 at 17. Plaintiff alleges that he notified Defendant Buchanan that he was issued the medical pass and told him "that all he had to do was call medical and get the pass verified." <u>Id.</u> at 18. However, according to Plaintiff, Defendant Buchanan refused to verify the medical pass and ordered

Plaintiff to continue pushing and pulling a 600-pound cart. Id. Plaintiff contends that he "then filed [ ] grievance[s] and exhausted the administrative remedies on the matter." Id. He claims that on May 19, 2018, he filed an informal grievance, followed by a formal grievance on May 31, 2018, and an appeal thereafter. Id. at 18. According to Plaintiff, on June 26, 2018, the "ICT Team," for a second time, reassigned Plaintiff's prison job to "V-Dorm as an orderly." Id. at 18. According to Plaintiff, "V-Dorm by far is the most dreaded and undesirable job on the compound," requiring Plaintiff to carry dinner trays up and down stairs, mop, push and pull heavy carts, and work long hours. Id. He alleges that the job is intended to be "punitive in nature" and seems to claim he was reassigned to V-Dorm in retaliation for his May grievances.

Again, even assuming Plaintiff has sufficiently alleged the first two elements of retaliation, he has failed to allege the third – a causal relationship between the alleged retaliatory action (reassignment to V-Dorm as an orderly) and the protected speech (May 2018 grievances). See Crawford-El, 523 U.S. at 600. Plaintiff fails to allege that any named Defendant participated in the second job reassignment or had an improper motive to reassign Plaintiff to a job in V-Dorm. Rather, Plaintiff only states that the "ICT Team" reassigned him. Doc. 1 at 18. While Plaintiff does not explain the content of these May 2018 grievances, he does imply that they contained complaints regarding Defendant Buchanan's disregard of Plaintiff's no push/no pull pass. Id. at 18. However,

17

Plaintiff makes no claim that Defendant Buchanan is a member of the ICT team or is responsible for prison job reassignments. As such, Plaintiff's conclusory statements do not draw a sufficient connection between Plaintiff's second job reassignment to V-Dorm and the May 2018 grievances. Thus, he fails to allege that his second job reassignment was based on a retaliatory motive instead of legitimate actions taken pursuant to an institutional policy. This claim is due to be dismissed.

    iii.    *June 2018 & July 2018 Grievances*

Plaintiff claims that on June 29, 2018, he began filing a series of grievances "because of all the job tasks [in V-Dorm] . . . aggravated the pain in [his] lower back and hand." Doc. 1 at 19. He states that on July 8, 2018, he submitted a grievance about his long work hours and lack of sleep. Id. He submitted another grievance on July 9, 2018, requesting that Defendant Willforth reassign Plaintiff to another job, and a third grievance on July 10, 2018, regarding an incident where chemical agents left on the wall of V-Dorm aggravated his asthma.[3] Id. He maintains that on July 11, 2018, he was transferred to another prison in retaliation for his grievances. Id. at 20. Plaintiff claims the transfer was retaliatory, because

    Defendant John Doe had a problem with me

---

[3] According to Plaintiff, another inmate had been sprayed and residue from the use of chemical agents remained in his work area, aggravating his asthma. Doc. 1 at 19-20.

> exercising my free speech and threatened to transfer me, and I was transferred. Because of the short time [ ] gap from the filing of the grievances to the decision to transfer me, I was unmistakably transferred as a direct result of exercising my right to free speech and my filing the grievances.

Id. at 20.

Again, even assuming Plaintiff has sufficiently alleged the first two elements of retaliation, he has failed to allege the third – a causal relationship between the alleged retaliatory action (transfer to another prison) and the protected speech (June 2018 & July 2018 grievances). See Crawford-El, 523 U.S. at 600; see also Jemison, 386 F. App'x at 965; Williams, 347 F. App'x at 435 (finding conclusory allegations insufficient but officer's temporal reaction to a grievance and circumstantial evidence sufficient to state a claim).

First, Plaintiff's allegations do not demonstrate a causal or temporal connection between his transfer and Defendant Doe's January 16, 2018, statement "recommend[ing] that he be transferred." Doc. 1 at 14. Notably, he was transferred almost six months after Defendant Doe made his remarks about transferring Plaintiff. And by Plaintiff's own admissions, Defendant Doe did not threaten to transfer Plaintiff because he filed grievances, but instead because Plaintiff made disrespectful statements to Defendant Flesher at the tutor meeting. Id. at 15.

Further, while Plaintiff's allegations may provide a close temporal relationship between his June and July grievances and his July 11 transfer, Plaintiff does not allege that any particular Defendant knew about these grievances or had the ability to execute a transfer of Plaintiff to another prison. Plaintiff's conclusory statements do not draw a sufficient connection between any Defendant's conduct and his transfer. Therefore, the Court finds that Plaintiff fails to allege that his transfer was based on a retaliatory motive instead of legitimate actions taken pursuant to an institutional policy. As such, this claim is due to be dismissed.

### c.    Equal Protection

Plaintiff argues that Defendant Flesher violated his equal protection rights when she issued the January 5, 2018, disciplinary report. Doc. 1 at 12. According to Plaintiff, other similarly situated, white inmates (Cromer, London, Hayes, and Jeffery) were allowed to complain to Defendant Flesher without any punishment. Id. at 13. However, Plaintiff argues that "when [he] complained about the very same issue and at the correct forum with her encouragement, [he] get[s] punished for it." Id. He contends that there was no legal, rational justification for her to treat him differently, "other than [Plaintiff is] black and the others are white." Id. at 13.

"To establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable

20

treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986)).

Initially, Plaintiff, at best, only sets forth vague and conclusory allegations that race was a motivating factor in Defendant Flesher's decision to issue a disciplinary report for Plaintiff and not Cromer, London, Hayes, and Jeffery. Plaintiff fails to consider that Rule 33-601.314 is a race-neutral, legitimate prison regulation, and prison officials have a certain degree of discretion on how to enforce such rules. See Mathews, 752 F. App'x at 743 (holding that Rule 33-601.314 was a legitimate prison regulation and a valid limitation on inmate speech). And "absent any allegation of improper [discriminatory] motive, a mere claim of inconsistent outcome in particular," provides no basis for an equal protection claim. Thompson v. Patteson, 985 F.2d 202, 207 (5th Cir. 1993) (affirming district court's § 1915 dismissal of equal protection claim regarding alleged disproportionate application of prison regulation on publications, because the plaintiff failed to allege a discriminatory motive). Indeed, in his Complaint, Plaintiff offers two other theoretical motives for Defendant Flesher's decision to issue the disciplinary report that are not based on Plaintiff's race. He claims that Defendant Flesher had a retaliatory motive to issue the disciplinary report because Plaintiff exercised his right to

free speech at the tutor meeting, see id. at 10-9, 21; and that she issued the disciplinary report because she "knew [Plaintiff] had applied for clemency and that [he] had put in an interstate compact" request and wanted to ruin his chances of getting relief, id. at 10.

Further, the Court finds that Plaintiff's own allegation that UCI has a "custom, policy, and practice" of fabricating false, boilerplate charges to hundreds of other prisoners belies his claim that he was treated differently than other similarly situated individuals.[4] See Doc. 1 at 8-9. At one point, Plaintiff alleges that "the whole disciplinary process" at UCI is flawed, pointing to the "repeated, reoccurring complaint[s] that [Defendant Jordan] hears when he responds to inmate[] grievances," and "as evident by the many stories [Plaintiff] hear[s] from other inmates who had similar experiences." Id. at 11. Plaintiff also explains that he was found guilty of the disciplinary report not because of his race or some other immutable characteristic, but because of this improper "policy, custom and practice." Id. However, now, in an attempt to state an equal protection violation, Plaintiff argues that there is no other explanation for Defendant Flesher to have issued her disciplinary report "other than [Plaintiff] is black and the others are white." His allegations are contradictory and self-

---

[4] The Court addresses Plaintiff's allegations about this "custom, policy, or practice" when addressing Plaintiff's claims regarding Defendant Jordan's supervisory liability.

defeating.

Plaintiff also has failed to establish that he was similarly situated to Cromer, London, Hayes and Jeffery. "Individuals are similarly situated only if they are alike in <u>all</u> relevant respects." <u>Requena v. Roberts</u>, 902 F.3d 1162, 1173 (10th Cir. 2018) (emphasis added). He appears to claim that inmate Cromer was similarly situated because he also "verbally and aggressively disrespected [D]efendant [ ] Flesher by saying 'stop screaming in my fu**ing ear.'" Doc. 1 at 12. However, Plaintiff states that Cromer made this statement while he was Defendant Flesher's student, and in contrast, Plaintiff made his statements while he was a tutor working for the prison's educational department supervised by Defendant Flesher. <u>Id.</u> at 5, 12. As to inmate London, Plaintiff does not assert any facts supporting a contention that London violated prison rules or that he made any disrespectful statement to Defendant Flesher. Instead, he claims that London also requested to make additional copies and Defendant Flesher, much like her response to Plaintiff, denied London's request. <u>Id.</u> at 12. Likewise, as to inmate Hayes, Plaintiff does not assert that Hayes violated prison rules or made disrespectful statements to Defendant Flesher; but rather, Plaintiff states that Hayes got "into an argument with [Defendant Flesher's] clerk[,] inmate Grant[,] about getting copies." <u>Id.</u> Finally, Plaintiff does not sufficiently allege a similarity to inmate Jeffery, as he merely claims that "before [Jeffery] quit, [he] was notorious for verbalizing his

complaints to [D]efendant Flesher about various issues." <u>Id.</u> at 13. As such, he has failed to allege that they were similarly situated, and in turn, he has failed to state an equal protection claim. <u>See, e.g.</u>, <u>Fuller v. Gates</u>, 656 F. App'x 944, 945 (11th Cir. 2016) (finding that "district court did not err by dismissing [the plaintiff's] claims that the correctional officers violated his right to equal protection by treating white prisoners more favorably when assigning jobs and resolving disciplinary matters," because the plaintiff's factual allegations were insufficient to state a claim). This claim is due to be dismissed.

### d.   Deliberate Indifference to Serious Medical Need

Plaintiff also appears to claim that Defendant Buchanan, the cart-pusher supervisor, was deliberately indifferent to Plaintiff's serious medical needs by forcing Plaintiff to push a 600-pound cart after Plaintiff advised that he was in pain. Doc. 1 at 17-18. According to Plaintiff, he has a variety of acute and chronic physical injuries and the physical demands of being a cart pusher aggravated these injuries. Plaintiff asserts that on May 18, 2018, Dr. J. Putney wrote Plaintiff a "no push/no pull pass." <u>Id.</u> at 17. He claims that despite having the medical pass, a "dorm officer woke [him] up at 3:30 am on May 18th, 19th, and 20th, 2018, and told [him] that [D]efendant M. Buchanan said that unless you have your no push/no pull pass on you right now, you will push those carts." <u>Id.</u> at 17. Plaintiff claims that he then attempted to inform Defendant Buchanan about his injury by showing Defendant Buchanan his "deformed

hand and [ ] told him that [he] was in pain in [his] right hand that is still in recovery from a surgery." According to Plaintiff, he requested that Defendant Buchanan call medical to get a copy of his medical pass, so he would not have to work as a cart pusher. Id. He claims that Defendant Buchanan failed to call medical, which "was reckless and unreasonable and subjected [him] to an unreasonable risk of further harm." Id. Plaintiff states that he saw medical again on May 24, 2018, and Nurse McClellan prescribed him Tylenol for his pain. Id. at 18. Plaintiff was reassigned to a new job in V-Dorm on June 26, 2018. Id.

Plaintiff is a prisoner; thus, his claim of deliberate indifference to a serious medical need arises under the Eighth Amendment. See Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical need.  Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007).

> "A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id.  (citing Hill v. Dekalb Reg'l

> Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).
> In either case, "the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." Id. (citation and internal quotations marks omitted).

Brown, 387 F.3d at 1351. Next, the plaintiff must satisfy the subjective component, which requires the plaintiff to "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson, 598 F.3d at 737 (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.") (citing Farrow, 320 F.3d at 1245)).

> In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106, Farmer, 511 U.S. at 835. The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott [v. Foley, 182 F.3d 1248 (11th Cir. 1999),] that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor [v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000)] (stating that defendant must have subjective awareness of an "objectively serious need"

and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis added).

Plaintiff has not sufficiently alleged that Defendant Buchanan had subjective knowledge of Plaintiff's hand injury and then disregarded an excessive risk to his health by conduct that was more than mere negligence. Plaintiff's allegations demonstrate that he worked as a cart pusher for approximately four months before he attempted to inform Defendant Buchanan about his injured hand – from January 3, 2018, the date he was assigned as a cart-pusher, see Doc. 1 at 6, to May 18, 2018, the date Plaintiff was allegedly issued a no push/no pull pass, see id. at 17. Indeed, once he was issued his no push/no pull pass Plaintiff admits he did not immediately attempt to tell Defendant Buchanan, but instead mentioned the pass to a "dorm officer." Id. at 17. He claims that he eventually attempted to notify Defendant Buchanan by showing him his deformed hand and explaining that he was still recovering from a prior surgery. Id. Plaintiff then mentioned the no push/no pull pass but could not produce a copy for Defendant Buchanan's review. Id. at 18. Instead, Plaintiff asked Defendant Buchanan to contact medical himself.  Further, when Plaintiff returned to medical on May 24, 2018, he could have attempted to obtain a copy of the medical pass for Defendant Buchanan's review, but makes no allegations that he attempted to do so. Such facts do not demonstrate that

Defendant Buchanan had subjective knowledge of a serious medical condition.

Nevertheless, even assuming Defendant Buchanan did have subjective knowledge, Plaintiff has failed to demonstrate that he disregarded a serious health risk to Plaintiff by conduct that was more than mere negligence. Notably, Plaintiff explains that Defendant Buchanan later came by Plaintiff's cell to check on him, and Plaintiff again told him to contact medical to obtain a copy of the pass. <u>Id.</u> at 18. In any event, Plaintiff was reassigned to a new job in V-Dorm a month after he was issued the medical pass, and he makes no allegations that this extra month subjected him to an increased risk of harm. These facts do not demonstrate that his job assignment posed a serious risk to his health. These claims are due to be dismissed.

### e.   Intentional Infliction of Emotional Distress

Plaintiff argues that Defendant Flesher's fabricated disciplinary report subjected him to intentional infliction of emotional distress. <u>Id.</u> at 10. He claims that receiving the disciplinary report has made his life miserable, ruined his chances at clemency, subjected him to harassment, and caused extreme anxiety. <u>Id.</u> He also claims that Defendant Willforth and Defendant Doe's harassing comments of "[y]ou are the one who was found guilty for disrespecting Ms. Flesher," and "I recommend that he be transferred,"  made in the presence of Assistant Warden Knox subjected Plaintiff to intentional infliction of emotional distress. <u>Id.</u> at 15, 21.

28

The Eleventh Circuit, when addressing a Florida state law claim of intentional infliction of emotional distress, has delineated four factors:

> Florida courts have explained that a claim for intentional infliction of emotional distress has four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct by the defendant; (3) the conduct caused the emotional distress; and (4) the emotional distress was severe. See, e.g., Thomas v. Hospital Bd. of Directors of Lee County, 41 So. 3d 246, 256 (Fla. 2d DCA 2010); Stewart v. Walker, 5 So. 3d 746, 749 (Fla. 4th DCA 2009). To demonstrate that the defendant engaged in outrageous conduct, the plaintiff must show that the defendant's actions were "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla.1985) (quoting Restatement (Second) of Torts § 46 (1965)).

Christman v. Walsh, 416 F. App'x 841, 845-46 (11th Cir. 2011).

Plaintiff's allegations that Defendant Flesher issued a disciplinary report days after the incident, and that Plaintiff was notified of the charges while in his own cell, do not amount to the type of outrageous or atrocious conduct contemplated under a claim of intentional infliction of emotional distress. Likewise, Plaintiff's claim that Defendant Willforth and Defendant Doe allegedly harassed Plaintiff does not amount to the type of conduct charged under a claim of intentional infliction of emotional distress.  As such, Plaintiff has failed to state a claim of intentional infliction of emotional distress.

### e.   Supervisory Liability

Plaintiff also appears to hold Defendant Jordan liable in his supervisory capacity as the former warden of UCI for knowing that the FDOC's employees are issuing false disciplinary reports and implementing a "flawed disciplinary process." Doc. 1 at 8-9, 11. Plaintiff argues that the FDOC has a custom, practice, and policy that correctional officers may charge inmates with fabricated, "boiler-plate" disciplinary reports and then prevent the inmate from calling witnesses or filing grievances to challenge the disciplinary report. Id. at 8-9. He asserts that this issue is a widespread practice, and Defendant Jordan "knew or should have known about it because it's such a repeated, re-occurring complaint that he hears when he responds to inmate's grievances." Id. at 11. However, according to Plaintiff, Defendant Jordan did nothing to correct the issue. As relief for this violation, Plaintiff seeks a "permanent injunction enjoining Defendant [ ] Jordan, and/or his successor in office, agents, subordinates, employees, and all other persons in concert therewith, to stop the customs, practices, and policies" of not giving Plaintiff and other inmates a real opportunity  to state their case at the disciplinary hearing. Id. at 23.

Plaintiff also attempts to hold Defendant Jordan liable in his supervisor capacity as the former warden of UCI for "customs, practices, and policies of violating [P]laintiff's and other elderly inmates' First Amendment Right to Free Speech by not allowing them to reveal their medical problems to the ICT Team

before they are given their perspective [sic] job assignments." Doc. 1 at 23. According to Plaintiff, when an inmate goes before the ICT Team for a job reassignment, it is common practice for the officers to give the following instruction: "report to the door entrance and give your last name and DC#, and say nothing else, don't ask any questions, and don't show any medical passes to the team. Once you get your job assignment, leave and the next man goes in." Id. at 6. He claims that as a result of this unconstitutional policy of preventing inmates from showing medical passes when receiving a job reassignment, Plaintiff was forced to be a cart pusher, which worsened his medical condition. Id. at 17.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Id. Supervisor liability arises only "when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) (internal quotation marks and citation omitted).

31

> The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." Alternatively, the causal connection may be established when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

Cottone, 326 F.3d at 1360 (internal citations omitted). See also Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (affirming the district court's dismissal of the secretary of the DOC because the plaintiff failed to allege that the secretary personally participated in an action that caused the plaintiff injury or that the plaintiff's "injuries were the result of an official policy that [the secretary] established"); Harvey v. City of Stuart, 296 F. App'x 824, 826 (11th Cir. 2008) (affirming dismissal of a § 1983 action against a municipality because the plaintiff "failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations were insufficient to support the complaint").

Here, the first alleged constitutional violation is that Plaintiff's due process rights were impeded when he was prohibited from calling witnesses or speaking during the disciplinary hearing. Doc. 1 at 8-9. However, as discussed above, Plaintiff's due process rights were not implicated as a result of his

disciplinary proceedings. Further, Plaintiff does not allege that Defendant Jordan personally participated in his disciplinary hearing or directed his subordinates to act unlawfully. Moreover, simply responding to a grievance does not, in and of itself, make an individual liable for an alleged constitutional violation. See Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013) (unpublished) ("[F]iling a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." (collecting cases)); see also Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." (citations omitted)).

While he claims that the FDOC and Defendant Jordan, as the former warden of UCI, have a policy, practice, or custom of fabricating false, boiler-plate disciplinary reports, he does not allege facts showing "a persistent and wide-spread practice." McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004). Notably, the incident that Plaintiff relies on is the isolated facts of his January 2018 disciplinary proceedings. Although he alludes to another inmate, Jon DePriest, experiencing the same unconstitutional custom, policy, or practice, see id. at 8-9, he only claims that prison officials "planted a knife in [DePriest's] cell" in retaliation for him filing grievances, see id. He makes no

allegation that DePriest received a fabricated disciplinary report and that his disciplinary proceedings ran afoul of the Due Process Clause. These assertions do not demonstrate persistent and widespread practices. Thus, Plaintiff has failed to allege facts demonstrating "the extremely rigorous standard for supervisory liability." West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007). This claim against Defendant Jordan is due to be dismissed for failure to state a claim.

As to Plaintiff's claim that Defendant Jordan is liable for the harm caused to Plaintiff by preventing him from disclosing medical ailments before reassigning his job, Plaintiff again fails to allege that Defendant Jordan personally participated in any alleged constitutional violation. See Mathews, 480 F.3d at 1270. Although he claims that UCI has a policy, custom, or practice of prohibiting medical disclosure, Plaintiff attempts to demonstrate this common practice by relying on the isolated facts of his January 3, 2018, job reassignment. Doc. 1 at 6. These assertions do not demonstrate persistent and widespread practices, and thus, Plaintiff has failed to allege facts demonstrating supervisory liability. This claim is due to be dismissed.

It is, therefore

**ORDERED AND ADJUDGED:**

1.      The Complaint is due to be dismissed. While the Court might normally entertain an amended complaint, in this case any amendment to the

34

Complaint would be futile. Therefore, the Court **DISMISSES the Complaint with prejudice**.

    2.    The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

    **DONE AND ORDERED** at Jacksonville, Florida, this 21st day of April, 2020

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

c:    Wilbert R. Hurst, #U22029